# CHARLESTON

Deer Creek Lumber Company *et al.* v. Sheets *et al.*

Submitted September 22, 1914.   Decided September 29, 1914.

1. Logs and Logging—*Sale of Land—Reservation of Timber—Construction and Effect of Deed.*

    E. conveyed to S. a tract of land on which A. held right to cut and remove the timber within five years, not then expired, the deed reciting: ''The timber upon this tract of land was sold to A. by E. and is therefore reserved by the party of the first part in this deed.'' Held: Only the right of A. to cut and remove the timber within the five years was reserved or excepted, not a right of reversion to E. in case the timber was not cut and removed by A. within the time; and, the right of reversion upon A.'s failure to cut and remove passed by the conveyance to S., the grantee. (p. 21).

2. Deeds—*Construction.*

    Generally, where the language of a deed is susceptible of two interpretations, and the uncertainty is not cleared by evidence properly admissible, that interpretation is to prevail which is most favorable to the grantee. (p. 24).

Appeal from Circuit Court, Pocahontas County.

Bill by the Deer Creek Lumber Company and others against Ira W. Sheets and others. From a decree for plaintiffs, the defendant named appeals.

*Reversed and Bill Dismissed.*

*Henry Gilmer,* for appellant.

*L. M. McClintic* and *W. A. Bratton,* for appellees.

Robinson, Judge:

This suit is for an injunction to inhibit the defendant from cutting timber on his own land.

The whole controversy arises on a construction of the deed whereby defendant holds his land. It involves merely the question whether plaintiffs or defendant owns the timber on the tract. From a decree of perpetual injunction in favor of plaintiffs, defendant appeals.

E. N. and S. D. Ervin, owning a tract of 106 acres, by agreement under seal, dated Dec. 21, 1905, sold the timber on

the tract to E. M. Arbogast, with the following provision: "The parties of the first part agree to give to the party of the second part or their assigns five years to remove said timber and if not taken off in this time it is to revert back unless otherwise provided." On April 8, 1910, E. N. Ervin conveyed to S. D. Ervin and Lella, his wife, 48½ acres of the land, "subject, however, to the E. M. Arbogast timber contract." Then, on April 9, 1910, S. D. Ervin and Lella, his wife, conveyed the 48½ acres to Ira W. Sheets, defendant herein, the deed containing the following: "The timber upon this tract of land was sold to E. M. Arbogast by E. N. Ervin and is therefore reserved by the party of the first part in this deed."

The Deer Creek Lumber Company acquired the Arbogast right to the timber, and the same was later transferred to the Range Lumber Company. The two companies are the plaintiffs herein. None of the timber was cut within the five years. Shortly prior to the expiration of the five years, on Dec. 8, 1910, S. D. Ervin executed to the Deer Creek Lumber Company a paper writing purporting to sell, transfer, and assign to it all his "right, title and interest of every kind and nature in the timber" on the land owned by Sheets. He recited that he had reserved the timber in the conveyance to Sheets. This short and informal article mentioned no consideration but "value received." Though, as we have noted, the wife was an owner when the land was conveyed to Sheets, and joined in the conveyance, no notice of any interest remaining in her is taken in the paper whereby he purports to sell, transfer, and assign to the Deer Creek Lumber Company. Through this paper plaintiffs claim right in the Range Lumber Company to the timber on the land. They assert that when the five years expired, title to the timber reverted to the assigns of S. D. Ervin, and that the latter company now has title through him.

Did the title to the timber revert to Ervin's assigns upon the expiration of the five years? If Ervin and his wife had not conveyed the land, it is clear that the title to the timber would have reverted to them, as owners of the land, upon the failure of Arbogast or his assigns to cut and remove within

the five years. That Ervin and his wife held the right of reversion before they conveyed to Sheets can not be gainsaid. Did they by their deed to Sheets withhold unto themselves that right of reversion, or did it pass to Sheets by their deed? If they withheld the right, the assignment made to the lumber company by S. D. Ervin passes his interest therein, but not the whole interest which plaintiffs claim through it. If they did not withhold the right of reversion, it passed with the land to Sheets, and his act in cutting the timber is not one which should be enjoined.

Now, the language of the so-called reservation in the deed of S. D. Ervin and wife to Sheets, as we have seen, is: ''The timber upon this tract of land was sold to E. M. Arbogast by E. N. Ervin and is therefore reserved by the party of the first part in this deed.'' Would this language have been employed to withhold the right of reversion, the only right in the timber which the grantors held at the time? It does not say that they meant to withhold that right, but to withhold the timber itself. Yet at that time Arbogast or his assigns had title to the timber, and presumably would cut and take it away as they had the right to do. The grantors knew this and most evidently, by the language they used, meant to protect themselves against their general warranty, as to the Arbogast right. They say the *timber* is reserved. Why? Simply because it had been sold to Arbogast; because presumably he will take it. Note the use of the word ''therefore''. Do the words mean more than that the estate held by Arbogast is not granted—is not interfered with by the conveyance? We think they do not. For, they refer only to the thing that Arbogast owned, not to the contingent right that the grantors held, and virtually say that the reservation is made simply because Arbogast owned the thing reserved, that is, in his behalf. The words do not indicate that the reservation or exception is made because the grantors claim an interest in the timber. But they do indicate that it is made solely in behalf of what Arbogast owns. The right of Arbogast is reserved and excepted, nothing more.

The grantors in making the reservation or exception refer to the previous sale of the timber to Arbogast and give that

as the sole reason for reserving or excepting the timber. Thus they in fact say: "The timber has been sold to Arbogast, and what has been sold to him we reserve for him." They knew what had been sold to him, and they reserved that. In other words, they reserved or excepted the existing title in Arbogast or his assigns to cut and remove the timber under the contract made to him—to cut and remove it within five years from December 21, 1905. If they meant to reserve unto themselves a contingent right to the timber in case it was not cut and removed under the Arbogast contract, why did they not say so?

But plaintiffs say that the timber was reserved *by* the grantors and therefore did not pass to Sheets. As we view the language used, it was reserved *by* the grantors on behalf of Arbogast, but was not reserved *unto* the grantors themselves. At the time the conveyance was made, the title to the timber was vested under the Arbogast contract and was not in the grantors. The timber itself was therefore not a subject for reservation or exception unto themselves. It was a subject of reservation or exception on behalf of Arbogast, and the reasonable import of the language of the grantors is that they reserved his right only. The right of reversion that later might come to them could have been made a subject of reservation or exception, but they did not make it such. They reserved or excepted only the subject then held by Arbogast or his assigns—the Arbogast timber right on the land.

While the foregoing is our construction of the so-called reservation in the deed, we concede that the words used are not free from doubt. They do afford basis for the contention made by plaintiffs that Ervin and his wife meant wholly to withhold the timber on the land from the force of their conveyance to Sheets. In one sense they may be taken to mean that Sheets, the grantee, is to get no timber by the conveyance, in any event. It may truthfully be said that the language is susceptible to two constructions—that the language is ambiguous even in the light of the circumstances surrounding the grantors when they made use of the same. But the construction we have given the language is the reasonable construction under the light of the case, and that which is called

for by a cardinal rule.  Generally where the language of a deed is susceptible of two interpretations, and the uncertainty is not cleared by evidence properly admissible, that interpretation must prevail which is most favorable to the grantee.  This is an old principle of law, applicable to reservations, exceptions, and conditions as well as to other parts of the deed.  2 Minor's Institutes, (4th ed.), 1058; Hammon on Contracts, sec. 411; Devlin on Deeds, (3rd ed.), sec. 848. Nothing inconsistent with the application of the rule appears. It interferes with no intention clearly appearing from the deed as a whole.  It works no wrong.  On the other hand, the application of the rule here establishes justice in preventing the land of Sheets from being encumbered with that which did not rest on it when he took the conveyance for it.  When he purchased the land, it was only encumbered with the limited right to remove the timber under the Arbogast contract. The effect of the construction contended for by plaintiffs would be to allow Ervin, after he had conveyed the land, to extend the Arbogast right for an unlimited period.  In the light of the surroundings of the transaction, it is not reasonable to suppose, in the absence of express stipulation, that Sheets intended to leave such power over his land in the hands of his grantors.  Indeed the assignment made by Ervin, under which plaintiffs claim, bears upon its face doubt on his part whether he had any remaining interest to assign, if indeed not confession that he knew he had none.  Moreover, the form of the assignment and the time when it was made, just a few days before the expiration of the Arbogast right, indicate that it was a hasty and strained effort to extend the limited period of that right upon a last and exceedingly doubtful chance. None of the earmarks of the assignment bear evidence of good faith.  The purpose of the paper, judging from the way it was drawn and the time it was executed, was to take advantage of a legal quibble.  Equity frowns her condemnation.

When the timber sold to Arbogast reverted, it reverted to the fee then owned by Sheets.  Plaintiffs have no title by the paper writing from S. D. Ervin under which they claim.  He had reserved nothing that he could pass thereby.  He could not, as he undertook to do, convert the Arbogast five year

timber right into an unlimited one in favor of the Arbogast assigns, for he had withheld nothing, when he conveyed to Sheets, upon which he could do that. The bill is without foundation and must fall. The decree will be reversed and the bill dismissed.

*Reversed and Bill Dismissed.*