# CHARLESTON.

THE SUN LUMBER CO. *v.* NELSON FUEL COMPANY *et al.*

Submitted February 9, 1921.   Decided February 22, 1921.

1. LOGS AND LOGGING—*Mines and Minerals—Deed Held to Vest Title to Minerals With Irrevocable License to Use Timber for Mining and Removing Minerals.*

   A deed granting all of the minerals in and under a tract of land, with all such rights-of-way and such of the timber upon said land as may be necessary for the mining and removing of such minerals, vests in the grantee the title to such minerals and an irrevocable license to use so much of the timber as may be necessary for the mining and removing of such minerals. (p. 68).

2. LICENSES—*License Coupled With Interest for Valuable Consideration Not Revocable.*

   A license coupled with an interest acquired for a valuable consideration is not revocable, but may be enjoyed by the licensee so long as his interest in the subject-matter continues.   (p. 69).

3. LOGS AND LOGGING—*License to Use Timber Necessary for Removing Minerals Held Not to Confer Right to Use for Buildings for Employes of Mining Company.*

   A right to use so much of the timber on a tract of land as may be necessary for mining and removing the minerals therefrom will confer the right to use only so much timber as is reasonably necessary to be used in direct connection with such mining operations, and at such times as the same may be required for such uses.   It will not confer the right to use the timber upon such land for the purpose of building miners' houses, store houses, churches, schools, and houses of entertainment for the prospective employes of the mining company. (p. 70).

4. SAME—*Tender of Sum to Continue Right to Remove Timber Held Effectual Notwithstanding Conveyance of Land by Unrecorded Deed.*

   The grant of the timber upon a tract of land with a provi-

sion that the same be removed therefrom within ten years, or in case of failure to so remove it within such time that the grantee may extend the time for removal by paying to the owner of the reversion a certain sum per year, and in case of his failure to pay the same he will be treated as having abandoned the said timber, and the title thereto shall revert to the owner of the land, is not defeated where, prior to the expiration of said ten years, such grantee pays to his grantor the stipulated amount provided to continue the said right of removal for another year, and upon discovering that such grantor was not at said time the owner of the reversion, tendered to the owner of the reversion, as shown by the records in the office of the county clerk, said sum of money, which tender was refused, even though it turns out that said land had been theretofore conveyed away by the party to whom such tender was made by a deed which was not placed on record until after the expiration of said ten-year term. (p. 72).

5. SAME—*Conveyance of Timber of Certain Size Held to Include Only Timber of That Size at Execution of Conveyance.*

A conveyance of all the timber upon a tract of land which measures twelve or more inches in diameter, to be cut and removed within a certain stipulated time, includes only the timber of that dimension when the conveyance was executed and delivered. (p. 73).

Appeal from Circuit Court, Greenbrier County.

Action by the Sun Lumber Company against the Nelson Fuel Company and others. Judgment for defendants, and plaintiff appeals.

*Affirmed in part. Reversed in part. Rendered.*

*Haymond & Fox,* for appellant.

*Osenton & Lee,* and *Brown, Jackson & Knight,* for appellees Nelson Fuel Co. and others.

*Henry Gilmer,* for appellees J. C. and L. E. McClung.

RITZ, PRESIDENT:

The appellant complains upon this appeal of a decree of the circuit court of Greenbrier county dissolving a temporary injunction awarded to it inhibiting the defendant from cutting the timber upon a large tract of land which is held by said defendant under a mining lease, the timber on which plaintiff claims belongs to it.

In the year 1890 one Charles L. McClung was the owner of a large tract of land, or rather of a number of contiguous tracts, situate in Greenbrier county, and on the fifth day of February of that year he conveyed to M. Erskine Miller and others trustees all of the minerals of every kind upon and under a part of his land said to contain 4046 acres. This deed by its terms grants and conveys "all of the minerals of every kind in and upon and under that certain tract or parcel of land," which is then described by particular metes and bounds, "together with all necessary and convenient rights-of-way of ingress and egress in, over and through said land for the purpose of removing said mineral, or minerals, upon other adjacent lands, and also so much of the timber on said lands as may be required for mining said minerals and removing them from said lands." By another deed dated the 19th of August, 1892, said McClung conveyed to said trustees the mineral under another tract of land, which deed contains the same provision as to rights-of-way and timber as is contained in the deed of February 5, 1890. In 1896 said McClung conveyed to said trustees the minerals under still another tract of land, in which deed the same provisions are again made as to the rights-of-way and timber; and on the same day said trustees conveyed to said McClung a tract of land, which is described in said deed, from which conveyance, however, there is excepted and reserved all the coal and other minerals, and other substances on, in, and underlying said lands, and timber for mining purposes. The trustees who thus obtained the title to the minerals underlying the four tracts of land referred to in these deeds held the same for the Gauley Coal Land Company which at that time was a voluntary association, but which subsequently became a corporation, and took the title to the lands in its own name. In addition to these McClung lands, this company owns very extensive mineral lands lying not only in Greenbrier county, but in some of the adjoining counties. On the 23d of October, 1918, the Gauley Coal Land Company executed to John B. Laing a lease of certain of its lands for mining purposes, the lands acquired by said lessee containing about 2800 acres, about 2000 acres of which is included within the lands conveyed by the four deeds above referred to, part of said 2000 acres being

within the lands conveyed by each of said deeds, but not covering all of the lands conveyed by any of said deeds. This lease permitted Laing to enjoy in the mining of the coal the timber rights which the Gauley Coal Land Company had upon the land. Laing subsequently transferred all of his right under said lease to the defendant Nelson Fuel Company which at the time of the institution of this suit was the holder of the same.

Subsequent to the conveyance of these minerals by C. L. McClung, as above mentioned, to-wit, on the 10th of November, 1909, he made a deed to J. O. and L. E. McClung, by which he conveyed to them all of the timber upon his lands, which included the lands, the minerals under which had been theretofore conveyed, twelve inches in diameter and up, and on the same day J. O. and L. E. McClung conveyed this timber to E. G. Rider and F. D. Stalnaker. In this deed to Stalnaker and Rider there was excepted and reserved such timber as had been theretofore conveyed to or reserved by the Gauley Coal Land Company for mining purposes. Stalnaker and Rider, on the 18th day of November, 1909, conveyed the timber to Amos Bright and J. H. Brewster, who were acting for and on behalf of the plaintiff Sun Lumber Company, and who by deed of October 4, 1911, conveyed the same to that company, and it is under this deed that the plaintiff claims to be the owner of all the timber upon the land twelve inches in diameter and up.

By two deeds dated respectively the 13th of February, 1919, and the 7th of March, 1919, C. L. McClung conveyed to John B. Laing all of his remaining interest in these lands, with some inconsiderable exceptions. Laing transferred the right so acquired by him to the Nelson Fuel Company, which in turn transferred it to the Gauley Coal Land Company, so that the Gauley Coal Land Company thus became the full owner of the McClung lands, with the exception of such rights as may be vested in the Sun Lumber Company under the timber deeds above referred to, unless C. L. McClung had parted with his interest in it prior to his conveyances to Laing of February 13, 1919, and March 7, 1919, by a paper which he executed on the 8th of November, 1897, to Amanda Shawver, and which will be more particularly hereafter adverted to.

In the deed from C. L. McClung to J. O. and L. E. McClung conveying the timber upon this tract of land there is a provision in regard to the time within which said timber is to be removed, and which provision is as follows: "First, parties of the second part is to have ten years from the date hereof for the removal of the timber from the land and if not removed within the said ten years they are to pay to the parties of the first part the sum of two hundred dollars thereafter for each year the timber may remain on the lands for the privilege of continuing the removal, or should the parties of the second part abandon the timber or its removal it is to revert to the parties of the first part, but the payment of the $200.00 is to preclude the abandonment." This same provision in effect is contained in the deeds from J. O. and L. E. McClung to Rider and Stalnaker, and from Rider and Stalnaker to Bright and Brewster, and from Bright and Brewster to the plaintiff.

The interest of the several parties in this land, being as above indicated, the Nelson Fuel Company, on the 2nd day of October, 1919, notified the plaintiff that it was preparing to begin mining operations upon its lease, under the terms of which it was entitled to use all timber on the leasehold premises necessary for the mining and removal of the coal, and that in accordance with this right it would proceed at once to cut any timber which it found necessary for mine ties, mine props, tipples, railroad siding, cross ties for switches approaching its mine, store house, engine house, and for necessary houses for the miners who would be engaged in mining the coal.    Upon receiving this notice the plaintiff filed its bill setting up its title to the timber, as above stated, and claiming to be the owner of all of the timber on said tracts of land twelve inches in diameter and up, and averring that it was the intention of the defendant Nelson Fuel Company to cut the plaintiff's timber for the purposes specified   in   the   notice   above referred to, and asked that it be enjoined from doing so. A temporary injunction was granted.    To this bill the defendant Nelson Fuel Company filed its answer by which it contended that under the three deeds conveying the minerals to the Gauley Coal Land Company's trustees, and the one deed in which the minerals were reserved, because of the

provisions in said deeds in regard to the timber, it was the owner of said timber, and had the right to cut the same to the extent that it was necessary for the purpose of mining said coal and removing the same, and that it would require all of the timber upon said land for its mining purposes. It claimed that the deeds to the Gauley Coal Land Company's trustees, above referred to, were effective to divest C. L. McClung of the title to the timber upon this tract of land, and that his subsequent deed conveying the timber twelve inches and up to J. O. and L. E. McClung passed no title, for the reason that there was not at that time any title remaining in said C. L. McClung to the said timber. It claims further that, even though the deed from C. L. McClung to J. O. and L. E. McClung did convey the timber upon said tracts of land, the right to remove the same was limited to ten years, and that the said plaintiff claiming under said deed had not commenced or completed the removal thereof within said ten years, and had not complied with the condition requiring the payment of two hundred dollars a year for continuing such privilege, wherefore under the language of said deed the title to said timber reverted to and became vested in the Gauley Coal Land Company, the present owner of the reversion. It further claims that the deed from C. L. McClung to J. O. and L. E. McClung, above referred to, was ineffectual to pass any title to the timber upon said tract of land, for the reason that the said C. L. McClung had by a deed made long before he made the timber deed, to-wit, on the 8th day of November, 1897, conveyed all of the interest then remaining in him in said tract of land to Amanda Shawver, and certain of his children and grandchildren mentioned in said paper. In its answer, which it asks to be taken as a cross-bill, it asks that the paper last above referred to be construed by the court, and the status of the parties thereunder determined. It asks the court also to hold that the mineral deeds above referred to vested in the Gauley Coal Land Company the title to all of the timber upon said land, and that it was entitled to use all thereof as lessee of said company, and to hold that the plaintiff by virtue of the several timber deeds referred to acquired no title, or interest in the timber on said land; or if, perchance, it had ac-

quired any such title or interest that the same had reverted to the Gauley Coal Land Company, the owner of the reversion, under the last conveyances from McClung to Laing above referred to. Some testimony was taken by the parties, but little of it is of any materiality in the determination of the questions involved. The defendant Nelson Fuel Company proved by witnesses introduced by it that in order to carry on mining operations upon said tract of land it would require for mine props, mine ties, timber for the construction of its tipples, houses, stores, and other buildings useful in connection with said mining operations considerably more than all the timber remaining upon the tract of land, and the plaintiff did not undertake to controvert this testimony.

The court below held that the paper writing dated the 8th day of November, 1897, purporting to be a deed from C. L. McClung to Amanda Shawver, now Amanda McClung, is an executory contract to convey a life estate to said Amanda Shawver, and does not convey or contract to convey any other right or interest in the land, and that the reversion thereof, after the life estate so contracted to be conveyed, remained after the execution of said paper in the said C. L. McClung; that the mineral deeds above referred to vested in the Gauley Coal Land Company the title to so much of the timber as was necessary for its mining purposes, and it being shown that all of such timber was necessary for such purpose, the injunction was dissolved and the plaintiff's bill dismissed.

The decision of this case involves the determination of the following questions: What interest in the timber upon these lands was acquired by the Gauley Coal Land Company under the deeds to its trustees? And if it should be held that these deeds were effective to grant to it all of the timber upon the lands under the showing made then, of course, the subsequent deed made by C. L. McClung by which he attempted to convey certain timber to J. O. and L. E. McClung passed nothing. If, however, it be determined that the Gauley Coal Land Company did not acquire the timber upon these lands by the mineral deeds above referred to, then it is necessary to inquire whether the plaintiff has any interest therein holding under the deed made by

C. L. McClung to J. O. McClung and L. E. McClung purporting to convey all of the timber upon the lands twelve inches in diameter and up, and this involves a consideration of the effect of the paper executed by C. L. McClung to Amanda Shawver above referred to. If it should be held that this paper was effective to convey all of the interest that C. L. McClung had remaining in these lands to the said Amanda Shawver and the other parties mentioned in said paper, then, of course, his subsequent deed to J. O. and L. E. McClung purporting to convey the timber passed nothing, for there would be nothing remaining in him to convey. And should it be held that this paper was not effective to pass the title of C. L. McClung, then it becomes necessary to inquire whether or not any interest which the plaintiff acquired in said timber has reverted to the Gauley Coal Land Company for its failure to remove the same within the ten years specified in the deed, or to pay the annual consideration provided therein for an extension of the time.

. Was the circuit court right in its holding that the mineral deeds, to which reference has been heretofore made, granted the timber upon these lands to the Gauley Coal Land Company's trustees, or did these deeds confer only a license to use so much of the timber as was necessary for mining and removing the coal? It cannot be doubted that the purpose of these conveyances was to grant the minerals in these lands. That is what the grantees bought and paid for. The use of timber and the rights-of-way over the lands referred to in the deeds were only incidents to the grant of the minerals, to be used in connection with the enjoyment of the estate conveyed by the deed. We do not think it can be said that these deeds vested in the grantees therein any estate whatever in the timber. It only conferred upon them a license to use so much of the timber in connection with their mining operations as might be necessary therefor, and might be available when the time for its use in connection with such operations arrived. In the case of *Godfrey* v. *Coal Co.* 82 W. Va. 665, we had under consideration a very similar provision. That was a suit for damages brought by the owner of the land against a coal company operating thereon, for destruc-

tion of the timber, and the defense was made that inasmuch as the coal company had been granted the use of so much timber as was necessary for mining purposes, and that all of the timber upon the land would be necessary therefor, the plaintiff could not claim any damages for the destruction thereof. We held, however, that no title to the timber was vested in the grantee under the mineral deed, but that the same remained the property of the grantor until the grantee exercised his right to cut and appropriate it to the use contemplated, in effect holding that this right was a mere license incident to the grant of the minerals. A similar holding was made in the case of *Paxton Lumber Co.* v. *Panther Coal Co.,* 83 W. Va. 341. The plaintiff contends that if the defendant Nelson Fuel Company took any rights in the timber under the deed, it was a license to cut the same as its needs might require, and that the same was revocable by the grantor at any time, and was revoked by the subsequent conveyance of the timber. It is quite true that a mere license ordinarily may be revoked, and the licensee deprived of any right to act thereunder, but this rule is not without its limitations. Where the license is coupled with an interest granted upon a valid consideration, such license may not be revoked, but will confer upon the licensee the power to exercise the rights conferred so long as the interest to which the license is incident continues. 17 R. C. L., title "Licenses" § 91; *Gaussen* v. *Morton,* 10 B. & C. 731, 109 Eng. Reprint, 622; *Winter* v. *Brockwell,* 8 East, 308, 103 Eng. Reprint, 359; *Doe* v. *Wood,* 2 B. & Ald. 274, 106 Eng. Reprint, 529; *Wood* v. *Manley,* 11 Ad & E. 34, 113 Eng. Reprint, 325; *Miller* v. *State,* 39 Ind. 267; *Russell* v. *Hubbard,* 59 Ill. 335; *Thompson* v. *McElarney,* 82 Pa. 174; *United States* v. *R. R. Co.,* 1 Hughes (U. S. Cir Ct.) 138; *Boults* v. *Mitchell,* 15 Pa. St. 371; *Ricker* v. *Kelly,* 10 Am. Dec. 38, and note at page 41; *Chicago & Ind. Coal R. Co.* v. *Hall,* 135 Ind. 91, 23 L. R. A. 231; *Western Union Telegraph Co.* v. *Pennsylvania Co.,* 129 Fed. 849, 68 L. R. A. 968; *Ackroyd* v. *Smith,* 10 Eng. Rul. Cas. 1, and note at page 11. These authorities very clearly establish the doctrine that where a license is coupled with an interest, it may be exercised as an incident to that interest, and may not be revoked so long as the

interest to which it is incident is vested in the licensee. We are of opinion in this case that the right of the defendant to the use of timber for its mining purposes is a license coupled with its ownership of the minerals in the land, and that so long as it owns these minerals this license to use the timber may be exercised by it. It confers upon the defendant the right to take so much of the timber as may reasonably be required for the mining and removal of the coal, and as the same may be required for that purpose, and the plaintiff took the title to the timber subject to this right of the defendant.

The defendant contends that it has a right to use this timber for the construction of houses, store buildings, churches, and places of amusement for the men whom it will employ in its mining operations, as well as for the erection of tipples, railroad sidings, mine tracks, and for props in the mines, and that even though it may only have an irrevocable license, it has the right to use all of this timber for the purposes aforesaid. As before stated, the license does not confer upon the licensee any title or interest in the property. It has a right to use it, and of course this right of user exists only when the occasion therefor arises. The defendant under its mineral deeds did not acquire any interest in any of the timber on this land, but only a right to use so much of the timber as its mining operations might require, as the same were carried on. The title to the timber remained in McClung, and passed to his grantees in the timber deeds. If in the conduct of its mining operations the defendant uses all of the timber on the land for the purposes contemplated by the parties, then nothing will remain for the plaintiff. If, on the other hand, plaintiff removes the timber conveyed to it in advance of the use of it by the defendant for its mining purposes, the defendant, for those purposes, will have to be content with exercising its right upon such timber as may remain when the same is required for mining. The mining operations upon this 2000 acres of land will doubtless continue for many years, and the timber now upon the land which is at this time of insufficient size for mine props or mine ties, in all probability will be sufficient for that purpose when the time for its use arrives. Can the defendant's contention that it is entitled to use this timber

under this license for the purpose of building miners' houses, store houses, churches, theatres, schoolhouses, and buildings of this character that it may be desirable or advisable to provide for the use and entertainment of its employes, be sustained? The right given by the deed is limited to such timber as may be necessary for mining and removing the coal. Did the parties contemplate the building of a mining village from timber cut from this land under this license? We do not think so. We think the timber which the defendant is entitled to use under the license must be such as is necessary for the operations directly connected with mining and removing the coal, such as the props used in its mines, ties used for its mine railroads, timbers for its tipples and entries, and for cross ties for sidings constructed to its tipples. It is argued that it is just as necessary for the miners to have houses to live in, and for the company to have a store building where the miners may secure provisions and supplies as it is to have railroads and mine openings. This is entirely true, and it may be that the defendant, for the more effective and convenient operation of its business may provide these things, but can it be said that they are necessary for mining and removing the coal? They are an incident to the business but not so directly connected with it as that it can be said that they are necessary thereto within the meaning of the license granted. There is some discussion of what is included in the terms "mining rights" and "mining purposes" in the cases of *Denver & Rio Grande Ry. Co.* v. *United States,* 34 Fed. 838; *United States* v. *Chaplin,* 31 Fed. 890; *United States* v. *Denver & Rio Grande Ry. Co.,* 150 U. S. 1; *United States* v. *Richmond Mining Co.,* 40 Fed. 415; *United States* v. *United Verde Copper Co.,* 71 Pac. 954; and *Duncan* v. *The American Standard Asphalt Co.,* 83 S. W. 124, from which it may be gathered that the rights to which the licensee is entitled under such licenses must be directly connected with the work of mining. None of these cases fully define the extent to which one may go in the use of timber under such a license as the one involved here, but all of the uses permitted in those cases consisted of a direct application of the timber to the contemplated purpose. We do not think this license can be extended to include

any use of timber except the direct application of it to mining and removing the coal, and that the attempt to use it in the construction of houses, store buildings, churches or theatres is beyond the licensee's right.

The defendant insists, however, that the plaintiff cannot maintain this suit for the reason that it did not remove the timber within the ten years provided within its deed, nor pay the two hundred dollars provided therein to be paid to prevent the title to said timber from reverting to the owner of the land. There is no merit in this contention. It appears that before the expiration of the ten years plaintiff did pay to C. L. McClung two hundred dollars with a view of extending its right for another year, but finding before the expriation of the ten years that C. L. McClung was not then the owner of the reversion it tendered two hundred dollars to the defendant Nelson Fuel Company, believing that it was at that time the owner of the land under the deeds made by McClung to Laing, and by Laing to it, above referred to. This tender was refused, and it turned out that the Nelson Fuel Company had before that time conveyed the land to the Gauley Coal Land Company, but this deed was not put on record until sometime afterward, so that at the time this tender was made, so far as the records in the county clerk's office were concerned, the Nelson Fuel Company was the owner of the reversion, and the tender of the money to it was sufficient to prevent plaintiff's title from becoming forfeited. In addition to this, upon the refusal of the defendant to accept this two hundred dollars, the same was paid into court for the purpose of preventing any forfeiture.

In its pleading defendant also sets up as a bar to plaintiff's right to maintain this suit the paper executed by C. L. McClung to Amanda Shawver on the 8th of November, 1897, prior to the execution of the timber deed by said McClung to J. O. and L. E. McClung, and asserted that if this paper was effective to convey C. L. McClung's interest in this land to Amanda Shawver, and the other parties mentioned therein, then the timber deed passed no title to J. O. and L. E. McClung, and this would be true. The court below, having all of the interested parties before it, construed this paper to be only an executory

contract for the conveyance of a life estate to the said Amanda Shawver, leaving the reversion in C. L. McClung. No complaint is made of this construction by any of the interested parties, and no reason is urged against it. We see no reason for disturbing the lower court's decree in this regard.

The plaintiff in its pleadings insists that it has a right under its deed to cut all of the timber upon this tract of land which may be twelve inches in diameter, or in excess thereof, at the time it actually cuts it, regardless of the size of such timber at the date of the timber deed, while the Nelson Fuel Company insists that if any timber was granted to the plaintiff at all it was only such timber as was twelve inches in diameter and up at the date of the conveyance of the timber by C. L. McClung in 1909. There is proof in the record that the poplar timber that was twelve inches in diameter at the date of the deed would in the intervening time have increased in diameter about two inches, and that such timber which was say ten inches in diameter at the date of the making of the deed would in the intervening time have grown to be twelve inches in diameter. The harder woods, it is shown, would not grow so rapidly as the poplar. As to the extent of their growth there is no evidence. It will thus be seen that there may be upon this tract of land considerable timber which was not twelve inches in diameter at the date of the deed, but which the plaintiff would be entitled to cut under its contention if the same should be sustained. The deed conveys "the timber twelve inches in diameter at the stump two feet above the ground and upwards and situate on the lands." There is nothing to indicate an intention that the deed should pass the title to any timber that was not at that time included within that description. Of course the parties fixed a limit of ten years within which to remove the timber, and it is undoubtedly true that it would be more convenient in executing this contract to apply its terms to the timber at the time it is actually cut, but this is not what the parties provided in their contract. As before stated, such a construction might include even within the ten years a large amount of timber which did not answer the description of the timber sold at the time the deed was made and delivered, and not only that, but there is a

provision in this contract which permits the purchaser to extend it from year to year after the expiration of the ten years by the payment of two hundred dollars per year. As to how long this timber may be allowed to stand uncut no one can tell, and if a sufficient length of time is allowed to elapse before the same is cut it may very well be that there will be as much timber twelve inches in diameter and up at the date of the cuttting, which was not of that diameter at the date of the deed, as there would be of timber that was of such dimensions at the time of the delivery of the deed.

This same question has been before the courts of other states, and with practical uniformity it has been held that where a deed conveys timber of certain sizes, or for certain purposes, and the time for determining whether or not the timber falls within the description is not specified, it must fall within the definition contained in the contract at the time of its execution and delivery, and that only such timber as does come within the terms of the contract at that time will pass by the deed. In the case of *Bryant* v. *Bates* (Ky.) 39 S. W. 428, where there was a contract for the sale of trees thirty inches in diameter and up at the stump, with the provision that the same should be removed within three years, the holding was that the measurement should be made as the same were cut, and not as of the date of the deed. But the same court subsequently, in the case of *Evans* v. *Dobbs*, 112 S. W. 667, held exactly the contrary. In that case it was held that where a contract was made for the sale of all the white oak timber suitable for the manufacture of staves upon the land described, the purchaser was only entitled to such timber as was suitable for such purpose at the date of the deed. In North Carolina it is uniformly held that only such timber passes as answers the description in the deed at its date, unless there is some other time mentioned at which the measurements shall be made. *Robinson* v. *Gee*, 4 Iredell, 186; *Whitted* v. *Smith*, 47 N. C. 36; *Warren* v. *Short*, 119 N. C. 39; *Lumber Co.* v. *Hines*, 126 N. C. 254; *Hardison* v. *Lumber Co.*, 136 N. C. 173; *Lumber Co.* v. *Corey*, 140 N. C. 462; *Isler* v. *Lumber Co.*, 146 N. C. 556. Like Holdings have been made by the Supreme Court of South Carolina in *Crawford* v. *Lumber Co.*, 79 S. C.

166, and *Wilson Lumber Co.* v. *Alderman,* 80 S. C. 106, 61 S. E. 217, 128 Am. St. Rep. 865. The holdings of the Supreme Court of Georgia also accord with this view. *McRae* v. *Stilwell,* 111 Ga. 65, 55 L. R. A. 513; *Goette* v. *Lane,* 111 Ga. 400; *Allison* v. *Wall,* 121 Ga. 822. In Pennsylvania the same doctrine is declared. *Boults* v. *Mitchell,* 15 Pa. St. 364; *Shiffer* v. *Broadhead,* 126 Pa. St. 260; *Irwin* v. *Patchen,* 164 Pa. St. 51. The case of *Putnam* v. *Tuttle,* 10 Gray 48, is also in point.

In view of the fact that the deed grants the timber twelve inches in diameter and up, and does not indicate that the size of the timber granted shall be determined at any other time than the date of the delivery of the deed, and of the further fact that the authorities, so far as we have been able to find, uniformly hold that in such case only such timber as is included in the terms of the grant at the time it was made will pass thereby, we are constrained to hold that the plaintiff is only entitled to remove from this land such timber as was twelve inches in diameter and up at the time of the grant by McClung in 1909. The evidence is not sufficiently certain for us to determine what would be the present size of such trees as were twelve inches in diameter at the time of the grant, nor is it at all necessary to fix at this time the limit of plaintiff's rights, for that will not become a practical question until it proceeds to remove the timber. When this happens, if the parties cannot agree, then some appropriate remedy will have to be applied to determine the limits of the plaintiff's rights.

J. O. and L. E. McClung appeared upon the hearing of this case in this court and asked that the decree of the lower court be modified so as to show that it was without prejudice to any rights they might have against their vendees to collect the unpaid purchase money for the timber conveyed by them to Rider and Stalnaker. The pleadings in this case did not involve in any way their right to collect purchase money. In fact that was foreign to the subject matter of this litigation, and it could not have been litigated in this suit even if the parties had attempted it. No decree entered here can in any way affect any interest or right they may have to enforce the collection of any unpaid purchase money.

Our conclusion, therefore, is to reverse the decree of the circuit court of Greenbrier· county except to the extent that it construes the paper writing made by C. L. McClung to Amanda Shawver as being only an executory contract for the conveyance of a life estate, in which respect said decree will be affirmed; and we will enter a decree here adjudging that the plaintiff has the title to the timber on said lands twelve inches in diameter and up; that the defendant, the Nelson Fuel Company, however, has an irrevocable license to cut and use so much of the timber upon said lands as may be necessary for the purposes of mining and removing the minerals, as hereinbefore defined. The injunction will be reinstated and perpetuated to the extent that the defendant is enjoined from cutting or using any of such timber for the construction of miners' houses, schoolhouses, store houses, churches, theatres, or any other use not directly connected with the mining and removal of the coal.

*Affirmed in part. Reversed in part. Rendered*