## CHARLESTON.

NELSON FUEL COMPANY *v.* AMANDA McCLUNG

(No. 5578)

Submitted May 11, 1926.    Decided May 18, 1926.

(Rehearing Denied November 12, 1926.)

DEEDS—*Where Location of Lands Depends on Construction of Prior Deed, Plat of Survey Made Before Execution of Such Deed, and Another Made Afterward in Fulfillment of Stipulation Therein for Resurvey, Together With Oral Testimony Proving Making Subsequent Survey and Identifying and Explaining Plat Based Thereon, Are Admissible.*

Where, in an action of unlawful entry and detainer, the location of lands conveyed in the deed upon which the action is predicated, depends upon the construction of a prior deed, a plat of a survey made before the execution of said prior deed and another made afterward in fulfillment of stipulation in it for a resurvey of portions of the land, together with the oral testimony proving the making of such subsequent survey and identifying and explaining the plat based thereon, are admissible in evidence, as bearing upon the interpretation of loose and indefinite descriptive terms in said prior deed and aiding in the application thereof to its subject matter.

(Deeds, 18 C. J. § 522.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Error to Circuit Court, Greenbrier County.

Action by Nelson Fuel Company against Amanda McClung and C. L. McClung. Judgment for plaintiff, defendant brings error.

*Reversed; verdict set aside; new trial awarded.*

*Jarrett & Driscoll*, for plaintiff in error.

*S. M. Austin, C. M. Ward* and *Poffenbarger, Blue & Dayton*, for defendant in error.

WOODS, JUDGE:

The Nelson Fuel Company instituted this action of unlawful entry and detainer in the circuit court of Greenbrier county in 1919, against Amanda McClung and C. L. McClung, her husband. After C. L. McClung's death, in 1923, the action was revived against Amanda McClung in her own right and as survivor of said C. L. McClung. The defendant complains of a judgment entered on a directed verdict for the plaintiff.

In the year 1905 or 1906, Isaac Nutter, at the instance of C. L. McClung, made a survey and plat of the latter's holdings on the watersheds of Meadow, Hominy, Mill and Laurel creeks. The outside boundaries of said survey contained 5,208.8 acres. Several clearings were located and surveyed out by metes and bounds, totaling some 675 acres. Two of these clearings are particularly involved in this action: (1) The "Bottom Clearing", a tract of 25.8 acres, lying at the confluence of the north and south branches of Meadow Creek; and (2) the "Home Place", an oblong tract of 280 acres, extending east and west and lying almost wholly between the north and south branches a short distance to the east of said "Bottom Clearing", being separated from it by a neck of partly wooded land containing approximately 26 or 27 acres. C. L. McClung and Amanda McClung, in 1909, conveyed the timber on this 5,208.8-acre tract, excepting the clearings as aforesaid, to J. O. and L. E. McClung. This deed contained the following reference to the Nutter survey: "'On the land hereinafter described giving the exterior boundaries surveyed by Isaac Nutter, but excluding certain parcels of cleared land

embraced in the bounds of said survey and hackings and hereinafter more particularly and specifically described and set forth in this conveyance.'' And the last clause in said deed reads: ''It is hereby agreed a resurvey of said certain reservations of 675.9 of cleared or hacked land is to be made and if same is found less or more to be adjusted for on the basis of $10.00 per acre and the parties of the first part do warrant generally the title to timber hereby conveyed.'' In 1910, R. M. Cavendish made a resurvey of the timber conveyed as aforesaid under an agreement and direction of Amos Bright and E. G. Rider of the Sun Lumber Company, the said Lumber Company having purchased the timber from J. O. and L. E. McClung. This survey was made with the consent of the original grantor, C. L. McClung, and in pursuance of the provision contained in said timber deed providing for a resurvey of the ''cleared or hacked land'' so reserved in said deed. The apparent intention of this resurvey was to take out the cleared or hacked land actually existing in 1909, so that the grantees in the timber deed would not be compelled to pay for acreage which did not bear merchantable timber. In this resurvey, Cavendish threw the ''Home Place'', the ''Bottom Clearing'' and the intervening 27-acre strip of partly wooded land into one reservation, which was marked on his plat as ''C. L. McClung Res. Home Place''. Said strip of timber land (containing 26 or 27 acres) was included in the reservation, according to Cavendish, because ''there was some scrap timber standing on it and had the appearance of an old hacking, or at least the most of it, and I take it the timber was of no value, much.''

On April 19, 1919, C. L. McClung and Amanda McClung conveyed to C. W. Martin, Trustee, the ''Bottom Clearing'' and an additional acreage ''to be laid off at the western end of C. L. McClung's home place and clearings to contain sufficient to make, with the other parcel, fifty acres, which parcel of the home place and clearings is to be laid off outside of the timber deed and to extend up each fork of Meadow Creek, as near equal as may be and to be bounded on the east by a line run from a point on the timber deed and the north side of the home place through said home place and clearings southward

to the south line of the home place, where the same joins with said timber deed." And by deed of the same date C. W. Martin, Trustee, conveyed the same property to Lanark Coal Company. During the latter part of April, 1919, W. A. Sharp, at the instance of W. W. Martin, who had taken the deed to Martin, trustee, to the McClungs for their signatures and acknowledgments, surveyed a fifty-acre parcel off the western end of the Home Place reservation as set out in the Cavendish survey. Sharp states that he did not have a copy of Martin's deed, but that W. W. Martin and C. L. McClung instructed him as to what they wanted done in the survey; that he followed the Cavendish map calls; that on the following day Mr. Laing was on his holdings immediately south of the 50-acre survey and had witness to run some levels for an opening to a mine; that Laing made no reference to the fifty-acre tract as surveyed at that time. Sharp further testified that some time later Laing wrote him and asked him to run fifty acres out of entirely cleared land. During this second survey Sharp surveyed enough off of the 280-acre tract, as shown by Nutter survey, to make up the fifty acres, sold by the deed to Martin, trustee. On August 5, 1919, the Lanark Coal Company conveyed the fifty acres to the Nelson Fuel Company, also under direction of Mr. Laing. This deed after making conveyance of a certain portion of the "Bottom Clearing", endeavors to convey 41.2 acres off of the 280-acre tract (as set out in Sharp's second survey) to make up a full fifty acres, and concludes: "And the true intention of this deed is to convey to the said grantee herein * * * the full fifty (50) acres described hereinbefore in two parcels even should the boundaries of either of said two parcels be hereinafter varied by mutual consent or by order or decree of any proper tribunal."

This action was instituted to recover possession of a certain designated portion of the western end of the "Home Place" 280-acre tract, as surveyed and platted by Nutter, which plaintiff claims that the defendant now unlawfully withholds from it.

Cases involving the interpretation of the "timber deed" of 1909 have been in this court before. See: *Sun Lumber Co.* v.

*Nelson Fuel Company*, 88 W. Va. 61; *Marguerite Coal Co.* v. *Meadow River Lumber Co.*, 98 W. Va. 698; *Laing* v. *McClung*, 91 W. Va. 776. In the last mentioned case, John B. Laing sought to recover in ejectment 2,000 acres ''Lying on the watershed of Meadow Creek, in Meadow Bluff District, of Greenbrier County, * * * included within that certain timber deed'', claimed by him under a deed from L. C. McClung and wife, dated February 13, 1919. In this suit in ejectment C. L. McClung and Amanda McClung filed their separate disclaimer in writing, in which, among other areas, they excepted ''the C. L. McClung home place, containing 381 acres, according to the Cavendish survey''. Thereby an ascertainment of the true area of the home place was made necessary. In that case, as here, the deed under which Laing claimed contained loose and indefinite descriptive terms. And there, as here, the plaintiff rested his claim as to the true boundary of the ''Home Place'', on the Nutter survey and sought to reject the Cavendish plat, and evidence based thereon, as improper. The circuit court admitted this evidence over the objection of the plaintiff. This court there said: ''The timber deed on its face discloses evidence of intention not conclusively to adopt the Nutter deed [survey], for determination of the areas of excepted portions, and to have those portions resurveyed for more accurate determination thereof. The oral evidence objected to proves such a resurvey was made by Cavendish, within a year from the date of the deed. That it was made at the instance of Bright and Brewster, grantees of J. O. and L. E. McClung, is immaterial, since the grantees were entitled to the benefits of that provision as clearly as were their grantors. * * * It will be observed that there is no provision for a resurvey of the exterior boundaries, but it was agreed that the reservations should be resurveyed. The Nutter survey, however, extended to or rather located and designated the exceptions. * * * This survey makes the area of the home place considerably larger than does that of Nutter, and defendants claim title in accordance with the boundaries shown by it. This reveals the evidential value of the plat.'' The Court, thereupon, held: ''As bearing upon the interpretation of loose and indefinite

descriptive terms in a deed and aiding in the application thereof to its subject matter, a plat of a survey made before execution of the deed and another made afterwards in fulfillment of the stipulation in the deed for a resurvey of portions of the land, together with oral testimony proving the making of such subsequent survey and identifying and explaining the plat based thereon, are admissible in evidence on the trial of a case in which the construction of the deed is involved." In accordance with this holding, the Cavendish survey, together with the testimony based thereon, was held to be proper evidence to go to the jury. Applying the doctrine announced in that case, which we believe to be eminently sound, to the case here, what have we?

Where was the additional acreage, which was to be added to the grant of the "Bottom Clearing", in the grant of April 19, 1919, to make the fifty acres therein conveyed, to be laid off? The plaintiff contends that it was to be laid off on the western portion of the "Home Place" as designated by the Nutter survey. This would leave an intervening tract of some 27 acres between the "Bottom Clearing" and the land claimed in the declaration. The defendant rejoins by claiming (if the deed is not void for lack of definite description) that the land that the plaintiff is entitled to to make up the fifty acres, under the Cavendish plat, is located adjoining the "Bottom Clearing". The plaintiff contends that the land granted by the deed is susceptible of location and identification by the terms of the deed and the descriptive provisions thereof. We cannot agree to this proposition. Nor can we go to the extent, as claimed by defendant, of holding the deed void for uncertainty. The plaintiff would locate his land in the Home Place and Bottom Clearing as located by the Nutter survey. He would give no consideration to the Cavendish survey. The defendant would locate it from the area as defined by Cavendish. It is urged by plaintiff that the timber deed was based on the Nutter survey. This contention is met by the fact that the timber deed by a provision incorporated therein laid the foundation for the Cavendish survey. If the Nutter survey was infallible, why provide for a subsequent survey? The Cavendish survey was the latest expression of the parties to

the timber deed as to what was the true boundary of the Home Place and clearings, when the deed here under consideration was executed. The whole case turns on the true location of the Home Place and clearings. Since the terms of the deed of April 19, 1919, alone do not solve the inquiry, hence the necessity of resort to proof *aliunde*. Such evidence is always admissible for identification of the subject of the grant and for application of the terms of the deed to its subject. *State* v. *Herold,* 76 W. Va. 537; *Mylius* v. *Raine-Andrew Lumber Co.,* 69 W. Va. 346; *Winding Gulf Collieries Co.* v. *Campbell,* 72 W. Va. 449. In such case surveys and prior and contemporaneous conduct of the parties are all admissible to show a proper construction of the descriptive language of the deed in question. *Snyder* v. *Robinett,* 78 W. Va. 88. In that case there was a controversy as to which of two roads a provision in the deed referred. The Court there said: "If the evidence shows two roads, to either one of which the covenant could be applied with equal fitness, a latent ambiguity in the written instrument is thus disclosed; and, in such case, parol evidence is admissible to show the application of the terms to the subject matter, not to vary, contradict or add to them." The analogy of the foregoing case to the instant case is obvious. We are of opinion, therefore, that the circuit court erred in rejecting the Cavendish resurvey and map and the evidence of the surveyor in connection therewith. The Rader map, as well as the Sharp map, and the oral evidence predicated on each, should likewise have been admitted. However, this latter evidence was only rejected, inferentially. This all should have gone to the jury on the question of the location of the land in controversy. It is a question for jury determination under proper instructions.

As we view it, we cannot say that the facts here which control are undisputed, and are such that reasonable minds can draw but one conclusion, and that as a matter of law the plaintiff is entitled to recover. *Krodel* v. *Railroad Co.,* 99 W. Va. 374. Hence, a verdict for the plaintiff should not have been directed. We reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*