## GILFORD et al. v. WARD RUE LUMBER CO. et al.

District Court, W. D. Virginia, At Harrisonburg.

Dec. 16, 1936.

Peyton Randolph Harris, of New York City, and George S. Aldhizer, II, of Harrisonburg, Va., for plaintiffs.

Chapman & Morris, of Standardsville, Va., for defendants.

JOHN PAUL, District Judge.

The plaintiffs here are the executors and trustee under the will of John P. Gilford, deceased, together with others who are apparently the heirs at law of John P. Gilford. The bill of complaint alleged in substance that John P. Gilford, at the time of his death, was the owner in fee simple of a tract of 570 acres of land in Greene county, Va., and that, since the death of John P. Gilford, the plaintiffs have been and are now the owners of said land; that the land is covered with a heavy growth of valuable mechantable timber, and that in July, 1936, the defendants, without consent or permission of the plaintiffs, entered upon said land and wrongfully and lawlessly began to cut said timber and remove it from the land; that the defendants have cut and removed a large quantity of the timber and will cut and remove the balance thereof to the great loss and damage of the plaintiffs unless restrained. The bill prays that the defendants be permanently enjoined from entering on the premises or asserting any claim thereto and for an accounting as to all timber heretofore cut or removed. There was also a prayer for a temporary injunction pending the final determination of the cause and, notice of a motion for such temporary injunction having been given, an order was entered granting a temporary injunction and fixing a day for a hearing upon the merits.

Thereafter the defendants filed their answer and upon the issues raised certain evidence has been taken. From the bill, the answer, the exhibits filed, and the evidence taken, the following facts appear:

On August 17, 1916, one Morris D. Brown was the owner of the 570 acres and by a deed of that date he and his wife, Olive Lejeune Brown, sold and conveyed to David Jameson, trustee, for $3,500 cash, "all of the timber of every kind and character" on the land with rights of ingress and egress for removal of the same. The deed provided that the grantee, his successors, or assigns should have twenty years from the date of the deed within which to exercise the right of removal of the timber with the further right of extending the period of removal for not exceeding five years longer provided the grantee would pay to the grantors, their legal representatives, or assigns, the sum of $210 per year for each year of such additional five-year period as they might desire to exercise the rights granted. In other words, if the purchaser of the timber had not removed it within twenty years and desired an additional period within which to remove it, he might have such additional time not exceeding five years on condition that he paid $210 a year for each year of such extended period as he utilized. It will be noted that $210 represents 6 per cent. on the purchase price.

I find that this provision whereby purchasers of timber with a limited period for removal may extend the period for such removal for a further period of years by paying interest on the purchase price during the extended period is a very common one in deeds for the sale of timber in this and adjoining states; and its effect has been often construed.

The deed from Brown further provided that at the expiration of the rights granted the purchaser of the timber for its removal, either at the end of twenty years if no extension was effected or at the end of any extension granted, all timber, logs, lumber, etc., growing or cut that remained on the premises should "revert to and become the property of the parties of the first part, their heirs, executors or assigns."

By proper mesne conveyances the timber passed from Jameson, trustee, to defendants, who acquired it together with other timber tracts by deed from the West Virginia Timber Company, dated February 10, 1926. All of the intervening deeds make reference to and preserve the right of removal of the timber as set out in the original deeds conveying the timber, the language being, "the time within which said rights can be availed of and said timber removed and all other conditions relating thereto to be the same held by grantors by virtue of their deeds and contracts with the owners of the lands whereon said timber is growing."

Some years later, in January, 1926, Brown and his wife conveyed the 570 acres of land to John P. Gilford by an instrument which appears to be a mortgage to secure a debt, it being expressly stated therein that "this mortgage shall not include any standing timber now on said land." And by deed dated May 24, 1928, the Browns conveyed the absolute fee-simple title to the land to John P. Gilford, the deed containing this provision: "It being understood and agreed that all timber rights in and to said property, and the right to enter for the purpose of removing same, is hereby reserved to the parties hereto of the first part." For some years, possibly before the conveyance of the fee in the land to Gilford, Brown has not been living in Greene county.

After acquiring the timber, the defendants cut and removed portions of it from time to time, but considerable of it remained standing as the end of the twenty-year period of removal approached. The defendants desiring to exercise their right for an extension of time, inquired of the treasurer of the county to learn the name of the present owner of the fee in the land and were informed that the land was assessed in the name of John P. Gilford's estate and that the legal representative of that estate was the City Bank Farmers Trust Company of New York City. Thereupon the defendants, on August 6, 1936, approximately two weeks prior to the expiration of the twenty-year period, addressed and mailed to the City Bank Farmers Trust Company at its proper address in New York City a letter referring to the right of extension given in their deed to the timber, stating that they wished to exercise this right and inclosing a check for $210, the amount of the yearly payment for such extension. By a letter dated August 11, 1936, the City Bank Farmers Trust Company (which is one of the executors of Gilford and one of the plaintiffs here) returned the check to the defendant with the rather indefinite statement that, "From our investigation to date, we are unable to determine that we should receive or retain the check which you forwarded and are herewith returning the same." The defendant, not unnaturally, construed the quoted letter as indicating a lack of knowledge of the provisions of the deed to the timber and of the rights created thereunder, and on August 13, 1936, wrote again to the trust company, quoting at length from the provisions of the deed and advising that the check would be held "until we hear further from you in the matter" and that "we will return you the check for $210.00 any time you advise." To this letter no reply was made. Thereafter the defendants, not then knowing the whereabouts of Brown and being desirous of protecting their rights as fully as possible, requested the Bank of Greene County to accept and hold a check for $210 payable to "The City Bank & Farmers Trust Company, Executors Estate of John P. Guilford, or Morris D. Brown and Olive Lejeune Brown." The bank did not care to undertake such an uncertain task and declined; but the defendants still hold the check, willing to pay it to whomsoever may be entitled to it.

As before stated, the City Bank Farmers Trust Company made no answer to defendants' letter of August 13, 1936, in which the latter explained the conditions of the timber purchase and reoffered the check. But on September 8, 1936, the attorney for the plaintiffs sent a letter to defendants demanding the cessation of all operations on

the land and on September 10, 1936, the City Bank Farmers Trust Company sent a similar letter. Neither of these letters refer to the previous correspondence, nor do they indicate the theory or basis upon which the defendants are to be treated as trespassers; they merely assert ownership of the land coupled with a peremptory demand that defendants cease cutting timber and the avowal of an intention to hold defendants responsible for damages. Thereafter on November 7, 1936, plaintiffs brought this suit with a bill of complaint, the allegations of which have been referred to hereinbefore.

The bill fails to disclose the theory upon which plaintiffs contend that they have become vested with the ownership of the timber. It must be their position that the defendants have forfeited any further claim or title thereto through failure to comply with the conditions under which they were allowed to remove it, that the defendants have lost the right of removal, and that the timber remaining on the land has reverted to the plaintiffs. This theory must necessarily be founded on the assumption that defendants failed to comply with the provision of their deed relating to the extension period; and, inasmuch as the defendants did duly notify the plaintiffs and tendered them the amount due, it is evidently the contention of the plaintiffs that the notice and tender should have been made to the Browns; and, not having been so made, the right to remove the timber has expired and the timber reverts to plaintiffs as owners of the fee in the land. In other words, that while Brown, the original grantor, was the proper person through whom the extension was to be obtained, that nevertheless the plaintiffs, as present owners of the land, are entitled to any benefits accruing through failure to obtain such extension from Brown.

In some cases involving timber rights, it may be of importance to determine who is the owner of the reversionary interest in timber not removed within the time limited; but in this case, it is not necessary to pass on this question in order to point out the various reasons why this bill is without equity and must be dismissed. A brief discussion of some general principles, however, may not be out of place.

■ The law regarding sales of timber under conditions similar to those here is rather well settled. The weight of authority is that standing timber is realty, subject to the laws of transfer applicable to that kind of property, and that deeds conveying such timber and providing for its removal within a specified time, as ordinarily drawn, convey an estate in fee in the timber, defeasible as to all timber not cut and removed within the specified period. Carolina Timber Co. v. Wells, 171 N.C. 262, 88 S.E. 327, at page 328; Young v. Camp Manufacturing Co., 110 Va. 678, 66 S.E. 843; Hawkins v. Lumber Co., 139 N.C. 160, 51 S.E. 852, at page 853; Dennis Simmons Lumber Co. v. Corey, 140 N.C. 462, 53 S.E. 300, 6 L.R.A.(N.S.) 468; Hornthal v. Howcott, 154 N.C. 228, 70 S.E. 171, at page 172.

■ It is further held by the weight of authority that stipulations providing for extension of the time within which the timber must be cut are in the nature of options, that they do not of themselves create an interest in the property, but merely amount to an offer to create or convey such an interest when the conditions are performed. See cases cited, supra.

■ It is true likewise, as a general rule, that where there is a failure to remove the timber within the specified time and the land has meanwhile been sold, the remaining timber reverts to the then owner of the land and not to the original grantor. 38 C. J. 164, 165; Deer Creek Lumber Co. v. Sheets, 75 W.Va. 21, 83 S.E. 81; Morton v. Pine Lumber Co., 178 N.C. 163, 100 S.E. 322; Carolina Timber Co. v. Wells, 171 N.C. 262, 88 S.E. 327; Hornthal v. Howcott, 154 N.C. 228, 70 S.E. 171; Bateman v. Kramer Lumber Co., 154 N.C. 248, 70 S.E. 474, 34 L.R.A.(N.S.) 615; Bunch v. Lumber Co., 134 N.C. 116, 46 S.E. 24; Sun Lumber Co. v. Nelson Fuel Co., 88 W.Va. 61, 106 S.E. 41.

■ And that where, as in this case, the vendee is given the privilege of an extension period for removal of the timber, the notice of his intention to extend and tender of the consideration for the extension should be made to the person who is owner of the land at that time. See Carolina Timber Co. v. Wells, 171 N.C. 262, 88 S.E. 327; Carolina Timber Co. v. Bryan, 171 N.C. 265, 88 S.E. 329; Morton v. Pine Lumber Co., 178 N.C. 163, 100 S.E. 322; Sun Lumber Co. v. Nelson Fuel Co., 88 W. Va. 61, 106 S.E. 41.

The reasons why the reversion follows the fee in the land are well set out in Hornthal v. Howcott, 154 N.C. 228, 70 S.E. 171. But this is not to deny that it may be possible for the grantor of the timber to hold

the reversion therein against a subsequent grantee of the land, providing appropriate language is used in the conveyances to indicate this intention and to accomplish the result. See Carpenter v. Camp Mfg. Co., 112 Va. 300, 71 S.E. 559. In that case, timber was sold to Brunswick Lumber Company by deed with provisions as to extension of time for removal, as in this case. The grantor later sold the land, the deed providing, "but there is reserved to the parties of the first part all the timber on said land heretofore conveyed to the Brunswick Lumber Company, and all rights under the contracts of sale to said lumber company, whether of reversion of said timber or payments to be made by said company for any cause, and all·other rights whatever." The case did not require the court to pass upon the effect of this reservation as between the grantee of the land and the heirs and personal representatives of his grantor, but the opinion plainly implies that the language used did succeed in reserving to the original grantor the rights undertaken to be reserved. In Henry Levis & Co. v. Parrott Lumber Co., 119 Ga. 476, 46 S.E. 647, 648, a landowner sold certain timber rights to be exercised within eight years, with a provision that "all timber remaining on above lots to revert back to this company at eight years." A year or so after, the grantor conveyed the land by deed containing the clause: "All timber on above lots sold prior to this day reserved." The eight years having expired, the then owner of the land sued the grantee of the timber for timber cut and removed after the eight years. It was held that the plaintiff had no cause of action because the reversion of the timber was in the original grantor.

However, in the case of Deer Creek Lumber Co. v. Sheets, 75 W.Va. 21, 83 S.E. 81, a somewhat similar reservation was construed to have a different effect. Certain landowners had sold timber to one Arbogast for removal within five years, "and if not taken off in this time it is to revert back unless otherwise provided." A portion of the land was then sold "subject, however, to the E. M. Arbogast timber contract." This same portion of the land was later conveyed to Sheets by a deed reciting that "the timber upon this tract of land was sold to E. M. Arbogast by E. N. Ervin and is therefore reserved by the party of the first part in this deed." In litigation that followed failure to remove the timber within the prescribed period, the court held that the reversion to the timber was in Sheets, the then landowner. The view of the court was that the reservation in the deed to Sheets was a withholding from that conveyance of what had been previously conveyed to Arbogast, but was a reservation on behalf of Arbogast and not a reservation unto the grantors themselves. Says the court:

"At the time the conveyance was made, the title to the timber was vested under the Arbogast contract and was not in the grantors. The timber itself was therefore not a subject for reservation or exception unto themselves. It was a subject of reservation or exception on behalf of Arbogast, and the reasonable import of the language of the grantors is that they reserved his right only. The right of reversion that later might come to them could have been made a subject of reservation or exception, but they did not make it such. They reserved or excepted only the subject then held by Arbogast or his assigns—the Arbogast timber right on the land."

In the instant case, the language in the deed whereby Brown conveyed the timber to the effect that upon expiration of the time for removal all timber that may remain on the land is "to revert to and become the property of the parties of the first part, their heirs, executors or assigns" is without significance so far as concerns the establishment of a right of reversion in Brown. Under the decisions in this state, the reversion existed without special mention thereof. But the language used in the deed conveying the land would be of importance if a case were presented where its construction became necessary. The language is, "all timber rights in and to said property and the right to enter for the purpose of removing same, is hereby reserved to the parties of the first part."

Under the reasoning of Deer Creek Lumber Co. v. Sheets, supra, this language probably does not sufficiently indicate an intention to hold the right of reversion in Brown. If we follow the Georgia case of Henry Levis & Co. v. Parrott Lumber Co., supra, it would be to hold that Brown did reserve his right of reversion. But the instant case is not a quarrel between plaintiffs and Brown as to the ownership of the reversion. Here the plaintiffs are claiming that the timber has reverted to them for the reason, apparently, that, as they assume, no notice of extension was given to Brown; and Brown is not made a party to the suit.

436

■ In view of the foregoing statement of principles, it is quite apparent that it is unnecessary here to determine where the ownership of the reversion or the potential reversion lies. It is, I think, clear that the notice of intention to take advantage of the period of extension and tender of the appropriate payment therefor was to be made to the owner of the potential reversionary interest, the person whose estate was affected. If it was proper that such notice be given to the plaintiffs who own the land and are claiming the reversion in the timber, · then there has been a complete compliance by the defendants of their duty in this respect, for notice of the intention to extend was given the plaintiffs in due time and accompanied by tender of the proper consideration for the extension.

■ If on the other hand the reversion in the timber is in Brown and we are to assume that no notice to extend was given him, the inability of plaintiffs to seek the relief here asked is equally apparent. If the timber has reverted to Brown, by what right do plaintiffs now claim it? and by what right do they assert that it is their timber which defendants are now cutting? They do not purport to be agents of Brown or acting on his behalf. If the defendants should have given notice to Brown and if they failed to do so and if, in consequence, the timber has reverted to Brown, the plaintiffs are merely in the position of owners of land, the timber upon which is owned by some one else—Brown. This does not give them a right to take the timber for their own. Their only remedy is to compel the owner of the timber to remove it in order that the plaintiffs may have the free and unincumbered use of the land. If the language used in Brown's deed of the land to plaintiff is sufficient to reserve to Brown the reversionary interest in the timber previously sold, then when the reversion has occurred the legal situation is the same, as to the timber reverting, as if Brown had reserved the timber to himself at the time he sold the land. He holds the timber upon the terms of his reservation which are,

as set out in the deed to Gilford, "with the right to enter for the purpose of removing the same." The most that plaintiffs can demand is that he remove the remaining timber within a reasonable time in order that they may have the use of the land; and it is not plaintiffs' concern by what agency it is removed, whether by Brown himself or by defendants.

■ There are other and minor reasons why the bill is not sufficient. It is apparent from all the facts disclosed that plaintiffs' claim is that defendants' right to remove the timber has been lost for failure to give notice to Brown of the extension period. But the bill contains no such allegation. For all that the bill shows, defendants may have given Brown notice in due time. True, the evidence at the trial indicated that notice had not been given Brown, but that does not cure the omission to so allege in the bill. Or it may be that Brown waived the notice. If, as plaintiff contends, Brown was the proper person to receive notice, then he had a right to waive it. Blackstone Mfg. Co. v. Allen, 117 Va. 452, 85 S.E. 568.

These omissions from the allegations of the bill are such as could possibly be cured. But it is evident, upon a consideration of the whole case, that plaintiffs have no standing to maintain this suit, for the reasons:

1. If the plaintiffs are owners of the reversion in the timber, the defendants have fully complied with the conditions upon which they have a right to further time for its removal.

2. If Brown is the owner of the reversion and if the timber has in fact reverted to him, then he holds it upon the terms of the reservation contained in his deed to Gilford and plaintiffs can do no more than compel him to remove it within a reasonable time.

The temporary injunction heretofore awarded will be dissolved and the bill dismissed, with costs in favor of defendants.