### STEINMAN DEVELOPMENT CO. v. W. M. RITTER LUMBER CO.

(District Court, W. D. Virginia. June 5, 1922.)

1. Mines and minerals ⬦⟹55(6)—Deed held to give mere license to cut timber.

A deed *held* to give a mere privilege, well described as a license, to cut and use timber needed in mining.

2. Mines and minerals ⬦⟹55(7)—Privilege of cutting timber held coupled with an interest, and assignable.

A license, given by a deed, to cut timber when needed in mining coal conveyed by the deed, *held* irrevocable, because coupled with an interest, and assignable along with the coal.

3. Mines and minerals ⬦⟹55(6)—Deeds held to give surface owner right to cut trees, part of which could be used for mining.

A deed of coal and the right to use and cut timber for mining purposes *held* to give grantee only a portion of the timber, and grantors had the right to sell from time to time all such timber as was not at the date of the deed and prior thereto, usually considered as mining timber; the grantee's right to cut and use small trees arising only as and when needed in the progress of mining.

4. Mines and minerals ⬦⟹55(6)—Deed, as to privilege of using timber for railroad purposes, construed.

A deed of coal and privilege of cutting timber for railroad *held* to give grantee license to cut and use timber only as needed for that purpose, and not to give the right to insist that surface owner should not cut timber, which, if left standing, will at some indefinite time in the future be useful to the grantee.

5. Mines and minerals ⬦⟹55(5)—Deed of minerals held not to include sand, rock, shale, etc.

A deed of all the coal, iron ore, and "all other minerals and fire clay in, under, and upon" the land in controversy, *held* not to include, under the rule of ejusdem generis, sand, rock, shale, water, and earth.

6. Mines and minerals ⬦⟹55(2)—Deed held not to give right to prevent use of stone by surface owner.

A deed of minerals giving grantee a mere license to use stone, *held* not to give grantee the right to prevent use of stone by the surface owner, in the absence of a showing of a present need of the stone by the grantee.

7. Quieting title ⬦⟹4—Suit to remove cloud from title held not proper remedy.

Suit to remove cloud from title was not a proper remedy by grantee of minerals to prevent conveyance or use by surface owner of trees, stone, and water, which the grantee had the privilege of using under its deed when needed; the surface owner or transferee not denying the rights of the grantee, and the latter having no remedy until its rights are invaded, or threatened, in which case other remedies must be used.

In Equity. Bill by the Steinman Development Company against the W. M. Ritter Lumber Company. Bill dismissed.

In 1875 J. B. Wright and others executed and delivered a deed which, so far as is now material, reads as follows:

"This indenture, made and concluded this 6th day of September, A. D. 1875, between J. B. Wright and Nancy J., his wife, and J. W. Wright and Mary, his wife, of the county of Buchanan and state of Virginia, of the first part, and A. J. Steinman, of Lancaster, Pennsylvania, of the sec-ond part, witnesseth: That the said parties of the first part, for and in consideration of the sum of three hundred dollars ($300) to them in hand paid by the said A. J. Steinman before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, have granted, bargained, sold,

aliened, released, and confirmed, and by these presents do grant, bargain, sell, alien, release, and confirm unto the party of the second part, his heirs and assigns, all the bituminous and other coals, iron ore and all other minerals, and fire clay in, under and upon the following described premises, to wit: All that messuage and tract of land situate, lying, and being on the Crane Nest and McLure forks of Sandy river, in the counties of Wise and Buchannan and state of Virginia, and bounded and described as follows: * * * Together with the exclusive right to excavate, search for, dig, and mine the said bituminous and other coals, iron ore and other minerals, and fire clay from the premises aforesaid, and the right to erect buildings and machinery for the purpose of establishing manufactories upon said property, and to sink shafts and drive tunnels, erect machinery and buildings, remove obstructions, and use and occupy so much of the surface of the said premises above described, to be designated by the party of the second part, his heirs and assigns, as may be necessary for the purpose of taking out, preparing for market, and removing the bituminous and other coals, iron ore and other minerals, and fire clay from the premises aforesaid, together with the right to the party of the second part, his heirs and assigns, and their servants, agents, and workmen, to have free liberty of ingress, egress, and regress into and from all or any part of the lands and grounds above described, with horses, carts, and wagons, cars, and locomotives, to take and carry away the said bituminous and other coals, iron ore and other minerals, and fire clay, to and for their own use or uses, and the right to make such roads thereon as they may consider necessary, and also the right to locate, construct, and operate one or more railroads over, through, and upon said premises, with such sidings, depots, houses, etc., as the party of the second part, his heirs and assigns, may consider necessary or convenient in locating, constructing, and operating said one or more railroads, and in mining, preparing, and carrying away from the premises aforesaid the said bituminous and other coals, iron ore and other minerals, and fire clay, *and also the right to cut and use timbers for the said railroad and mining purposes on said premises and the right to use all stones and water on said premises for all purposes*, and the right to deposit dirt and refuse matter. To have and to hold the said coal, iron ore, fire clay, and all other minerals, and all the rights and privileges hereinbefore granted or mentioned, or intended to be, unto the said party of the second part, his heirs and assigns, to and for the only proper use and behoof of the said party of the second part, his heirs and assigns, forever. And the said parties of the first part, for themselves their heirs and representatives, unto the said party of the second part, his heirs and assigns, warrant generally the title to the minerals hereby conveyed.

"In witness whereof, the said parties have hereunto set their hands and seals the day and the year first hereinbefore mentioned."

In 1916 A. J. Steinman conveyed and assigned all of his rights under the foregoing deed to Steinman Development Company, the plaintiff. In January, 1921, the plaintiff filed its bill in equity in which, after setting up its own claims as above indicated, it alleges:

(1) That the defendant, claiming indirectly under junior conveyances from the above-mentioned J. B. and J. W. Wright, asserts a right to take all of the trees and timber of every kind and description which will measure more than 12 inches in diameter outside the bark, measured at a point 16 inches above the ground, on a large part of the same land as that described in the deed to Steinman.

(2) That underlying the land in question there are at least two workable beds of valuable coal, and that plaintiff commenced mining one of the said beds of coal in 1918, has been continuously mining said bed ever since, "and expects to continuously mine the same until it is exhausted, and likewise expects in the near future to commence mining the said other workable vein."

(3) That a large part of the tract of land in question has been heretofore cleared for farming purposes, and that "the timber now standing on the said tract of land, and which was standing thereon at time that the

defendant entered thereon, as will hereinafter be set forth, was not and is not sufficient to enable the complainant to mine out the coal" in even the first bed of coal, to say nothing of the other beds, and that, if the defendant be allowed to take timber in accordance with its deed, the timber on the premises will be exhausted within five or six years.

(4) That in July, 1920, the defendant entered upon certain parts of the land in question and commenced cutting all timber which measured 12 inches in diameter outside the bark 16 inches above the ground, and the defendant proposes to, and unless enjoined will, cut, take, and carry away all of the timber on the land in question of or over the size above mentioned.

(5) "Complainant says that, in addition to its right to cut and use timber on the said premises for mining purposes, it has the right under the aforesaid deed, under which it claims title, to cut and use timbers for railroad purposes; that it has already constructed a railroad on said premises, extending from a point of connection with the Carolina, Clinchfield & Ohio Railway to its mines, and that in the further development of the said mines on the said premises it will be necessary to construct other and additional railroads, for which it will be necessary to use a considerable amount of timber for ties, trestles, and other railroad purposes, and that it will also be necessary to use timbers continuously for the maintenance of the said railroads."

(6) That in the region of the land in question timber has for a number of years been becoming more and more scarce and difficult to obtain, and in the near future railroad timber for mining and railroad purposes will not be procurable, except at exorbitant prices, and "that the coal in, on, and under the said lands is absolutely valueless without timber to mine the same; that for the reasons above stated the timber on the said land has a peculiar value to your said complainant, much above the market value thereof, and that the cutting and removal of the said timber by the defendant will cause to the complainant great and irreparable injury, which cannot be compensated in money."

(7) That the deed under which the defendant claims attempts to give the defendant "the right to take and use free of charge from said land any sand, rock, water, and other material (except coal, gas, and oil) necessary" for the construction, operation, or maintenance of all improvements which the defendant may desire to construct, operate, or maintain on the land, for the purpose of manufacturing into lumber and its finished product the trees and timber mentioned in the deed to the defendant, and that said deed is a cloud on plaintiff's title to the timber, sand, rock, water, and other material in, on, and under the land in question.

(8) That, in addition to cutting trees of 12 inches or more in diameter, the defendant has cut and claims the right to cut trees measuring less than 12 inches in diameter at a point 16 inches from the ground for use as ties for a railroad built by the defendant on the said premises for the defendant's logging operations.

(9) That the plaintiff has been largely damaged by the foregoing acts of the defendant, and that the defendant's method of proceeding greatly increases the danger from forest fires on the premises.

(10) The prayers are for an injunction, accounting, and that the deed to the defendant, "in so far as it undertakes to convey to the defendant the trees, or any thereof, on the said land, and in so far as it undertakes to convey to the said defendant the right to take and use from the said land any sand, rock and other material thereon, be declared to be a cloud upon the title of complainant, and that the said deed be canceled and held for naught to the extent aforesaid."

The bill was answered and numerous depositions were taken. The opinion which follows sufficiently indicates the nature of the answer and of the evidence, except that it should here be said that the evidence fully supports the plaintiff's allegation that all of the timber that was on the land when the defendant commenced cutting would be insuffi-

cient for mining the workable beds of coal underlying the premises in question.

J. F. Bullitt, of Philadelphia, Pa. (John W. Chalkley, of Big Stone Gap, Va., James L. Camblos, of Norton, Va., and J. F. Bullitt, Jr., of Big Stone Gap, Va., on the brief), for plaintiff.

Barnes Gillespie, of Tazewell, Va., and John W. Flannagan, Jr., of Clintwood, Va. (Greever & Gillespie, of Tazewell, Va., on the brief), for defendant.

## I.   Timber for Mining Purposes.

McDOWELL, District Judge (after stating the facts as above). I shall first consider only the plaintiff's right to timber for mining purposes. In the copy of the deed from the Wrights to Steinman of 1875, filed with the bill, the clause in question appears as "the right to cut and use timbers." From an inspection of the same clause in the six deeds to Price & Steinman, filed as exhibits with the deposition of W. M. Lambert, it seems practically certain that the word "timbers" in the Wright-Steinman deed is a typographical error for "timber."

[1, 2] Both in reason and by authority I am satisfied that the deed of 1875 gave to Steinman a mere privilege, well described as a license, to cut and use some timber when needed in mining. This license was irrevocable, because coupled with an interest, and was assignable, along with the coal, etc. See 25 Cyc. 645; 8 Am. & Eng. Ency. (2d Ed.) 1140; Godfrey v. Weyanoke Coal, etc., Co., 82 W. Va. 665, 97 S. E. 186, 189; Paxton Lumber Co. v. Panther Coal Co., 83 W. Va. 341, 98 S. E. 563, 565; Sun Lumber Co. v. Nelson Fuel Co., 88 W. Va. 61, 106 S. E. 41, 44; Kennedy Stave, etc., Co. v. Sloss-Sheffield Steel, etc., Co., 137 Ala. 401, 34 South. 372.

At this point it is advisable to note the language of the deeds involved in the cases relied upon by counsel for the plaintiff here. In McLemore v. Knott Coal Corp'n (Court of Appeals, Ky., unreported) the language of the deed was:

"And such of the standing timber thereupon as may at the time of the use thereof be by the party of the second part, or its successors or assigns, *deemed necessary or convenient.* * * * "

In McIntire v. Marion Coal Co., 190 Ky. 342, 227 S. W. 298, the language used was:

" * * * Including the right to use, * * * in any and every manner that * * * may, by party of the second part, its successors and assigns, *be deemed necessary or convenient,* * * * including * * * timber. * * * "

And later in the deed:

"But there is reserved to the parties of the first part all the timber * * * except that *necessary for the purposes hereinbefore mentioned,* and there is also reserved the free use of said land for agricultural purposes so far as such use is *consistent with* the *rights hereby* * * * *granted* and conveyed. * * * "

In the unreported case before Judge Pritchard (U. S. D. C., S. D. W. Va.) of United Thacker Coal Co. v. Connelly, the language was:

"And the right to use such trees from the land as may be necessary for use in its mines."

In this case Judge Pritchard, with how much or how little consideration I do not know, and possibly on an ex parte presentation, granted a temporary injunction. Nothing further appears to have been done in the case. But in any event there is a delicate, but important, distinction between the language employed in that deed and in the deed here, which seems to me to discriminate that case. The license there was in effect to take *all* the timber necessary for mining; here a mere right to take timber for mining purposes, which may mean less than all of the timber necessary for mining purposes. And this same distinction exists between the deed here and the two Kentucky deeds above mentioned.

In the case at bar the language used in the deed shows so clearly that the right given the grantee was to have only a portion of the timber that the point need not be discussed. It is contended by counsel for the plaintiff that the intent was to give the grantee all of the timber, except such as might be destroyed in clearing land for agricultural purposes. The intent that the grantors should retain the surface for agriculture, and hence should retain the right to clear the land, is too plain to be avoided. But I see no sufficient reason for denying an intent that the grantors should also retain the right to cut and sell from time to time all such timber as was not at the date of the deed, and prior thereto, usually considered as mining timber. The place in the deed, the way in which the license is given, as well as the language employed (and quite aside from the price paid), all go to show that the incidental license to cut and use timber was understood by both parties to be a matter of very slight importance. Had it been the intent that a possible right to cut and use all of the standing timber was to pass, the right would have been much more carefully and elaborately defined, and would have been given a more conspicuous place in the deed. The evidence of the actual mining practice during the early years of mining in the southwest Virginia field is at least a fair indication of the practice in 1875. And, without going into detail, the clear preponderance of the evidence is that only small, round timber was considered as mining timber, until (in very recent times) an increasing respect for the lives and limbs of mining employees, the use of electric haulage, and some drastic changes in legislation have made manufactured lumber and very heavy props and ties necessary. If, as I believe the evidence establishes, mining timber was in 1875 universally regarded as being only the small trees, capable of being conveniently and profitably used as props, collars, and ties without being split or ripped, then I think the right given Steinman was intended to be limited to cutting and using only such small trees.

It is contended that in 1875 only poplar logs at least 24 inches in diameter were merchantable, and hence that (subject to necessary destruction of timber in clearing land) all of the standing timber, except the very large poplar trees, was intended to be included within the license given Steinman. I cannot reasonably attribute to the parties to the deed such prophetic powers as would enable them to foresee electric haulage and present-day mining laws, and hence the great increase in the quantity and size, and the additional kinds of timber

now needed in mining. But I can reasonably ascribe to these parties an anticipation that many kinds and sizes of timber would be merchantable when mining on this land would be carried on which were not merchantable in Dickenson county in 1875. The parties were bound to know that there would be no mining until a railroad should be built into the vicinity of this land; and they must also in reason be assumed to have expected that bringing a railroad to the vicinity of the land would make merchantable many kinds and sizes of timber other than the very large poplar trees. They were bound to know that the population was increasing; that the demand for lumber was therefore increasing; that much of the timber aside from the very large poplars would be widely useful, if obtainable at a reasonable price; and that a railroad would, in Dickenson county as elsewhere, supply the cheap transportation necessary to make such other timber marketable.

However, I do not think that merchantableness or marketableness affords a certain test for distinguishing the timber excluded from the Steinman license. In the course of time, as mining on other tracts in the vicinity increases and as timber becomes scarcer, the small round timber growing on the land here in question will doubtless become merchantable. But no one would contend that the surface owner could disregard the right vested in Steinman's successor and sell the small mine props, for instance, from this land to other mine owners. It is by reference to the kinds and sizes of timber generally used in mining in 1875, and not by what is merchantable in 1922, or by what will become merchantable hereafter, that we should construe the deed to Steinman. As has been said, this includes only timber which is small enough to be used by merely cutting it (across the grain only) to the proper lengths. And it should be added that it would be unreasonable to suppose that the parties intended that the mine owner could cut down a large tree, merely because the upper part of the stem, or the larger limbs, could be used as round mining timber. On the other hand, it would be equally unreasonable to suppose that the parties intended that, when a large tree has rightly been cut down by the surface owner, he must abandon to the mine owner any part thereof that is merchantable. I find no sufficient reason for believing that the parties intended to make provision for their respective rights as to parts of individual trees. They descended to no such particularity. I think they dealt with trees as such, and not with parts of trees.

[3] I therefore construe the deed as intending (irrespective of the right of the surface owner acting in good faith to clear land for agriculture):

(1) That the plaintiff shall have the right to cut and use in mining, any and every tree of such diameter at the base of the largest log (cut at the usual height from the ground) as to be profitably used as *round* mine timber; i. e., without splitting or ripping.

(2) That the surface owners shall have the right to cut and use any and every tree which is too great in diameter at the base of the largest log (cut at the usual height from the ground) to be profitably used as round mine timber.

It is true that this construction of the deed puts it in the power of the defendant here to take and to sell (from the upper cuts) timber that can be profitably used as round mine timber. But this result is necessary, unless the parties to the deed of 1875 intended to provide as to their respective rights to parts of individual trees, and I find no warrant in the deed for assuming that they had such intention.

At this point it is advisable to consider the time when the license given Steinman was intended to become available. The language employed, "the right to cut and use timber for mining purposes," strongly indicates that the right *to cut and use* shall arise *only* as and when timber for mining purposes shall be actually and presently needed. The language of the deed seems to me wholly insufficient to show an intent that the mine owner should have a right to maintain on the land a timber preserve. As needed, he may cut and use; but he may not require timber to be preserved against his possible or probable future requirements. Just far enough ahead of actual necessities to prevent delays in mining the mine owner may cut timber; but his rights seem to me to go no further.

It follows that the plaintiff's right to cut and use the small trees arises only as and when needed in the progress of mining. In so far as the defendant is cutting and claims the right to cut and use timber which is not less than 12 inches in diameter 16 inches above the ground, I think the defendant is within its rights. The evidence shows that a log 12 inches at the base is too unwieldy to be profitably used as round mine timber.

It is alleged in the bill (paragraph 14) and not denied that the defendant is cutting (and claims the right to cut) trees of less than 12 inches in diameter for use as ties for the defendant's lumber railroad on and through the land in question. As and when needed by the plaintiff, it has the superior and exclusive right to all of the small trees which can be used as round mine timber as hereinbefore defined. But it is not alleged that the small trees in question have been, or are presently needed by the plaintiff. It follows that no right of the plaintiff's has been infringed, and the allegations of the bill are insufficient to show that the plaintiff's right to timber for mining purposes is threatened with infringement.

## II. Timber for Railroad Purposes.

[4] The clause of the deed heretofore considered reads: "* * * The right to cut and use timber for said railroad and mining purposes." The same reason for believing that the license to cut and use timber for mining purposes extended only to timber presently needed leads to the same conclusion as to timber for railroad purposes. In respect to future building of railroads by the plaintiff, the bill alleges at most a remote and indefinite probability. I can see no sort of propriety in enjoining the defendant because of the merely prospective right on the part of the defendant at some indefinite time in the future to cut and use timber for railroad purposes. In respect to a possible present need on the part of the plaintiff to have timber for the maintenance of its railroad now in existence, there is no suffi-

cient allegation to justify any relief. See paragraph 11 of the bill. It may be, for all that is alleged (and I cannot escape the belief), that there is ample timber on the land for all present needs of the plaintiff in addition to that which has been and that which will be taken by the defendant. Timber which, if left standing, will at some indefinite time in the future be useful to the plaintiff in the maintenance of its railroad is not, as I construe the deed, within the plaintiff's license. As there is no present unsupplied need on the part of the plaintiff for timber for railroad purposes, it is not necessary that I should now undertake to decide what kinds of timber are within the plaintiff's license.

In so far as the defendant is cutting and taking timber, I see no right in the plaintiff to relief.

### III.   Removal of Cloud on Title.

[5] The deed to Steinman grants him all the coal, iron ore and *all other minerals,* and fire clay in, under, and upon the land in controversy. The rule of ejusdem generis forbids that "other minerals" be construed as meaning all the sand, rock, shale, water, and earth to be found on the premises. Marketable minerals of comparatively high value, like coal, iron ore, and fire clay, if any, were I think alone intended to be granted, and I cannot otherwise construe the deed. And this conclusion is fortified by the subsequently expressed license to Steinman to use stones and water.

*Sand.*—There is, as has been said, no grant of sand to Steinman, and I do not find in the deed to him any license which necessarily gives him a right to use sand. But if there is an implied license to him to use sand, everything to be hereinafter said as to rock will be equally applicable to sand.

*Rock.*—There is in the Steinman deed a license to use all stones on the premises for all purposes, and in the deed to the defendant is a license to take and use rock necessary for such improvements as the defendant may construct, operate, and maintain on the premises.

If by possibility the deed to the defendant can be considered as a cloud on the plaintiff's title, it is I think of such inconsiderable importance as to fall under the maxim de minimis. I so say because there is no sort of pretense that the plaintiff can possibly need any stone or rock which would be wanted by the defendant during the defendant's temporary occupation of the land.

[6] It should also be remembered that the plaintiff has a mere license to use stone, and not a grant of stone, and hence that its rights are not and cannot be infringed, unless the plaintiff is in present need of stone. So far as the allegations of the bill and the evidence show, the defendant may have finished its operations and may have permanently abandoned the land long before the plaintiff has need for any stone at all. While I have not the time to investigate the point, it runs in my mind that where, as here, there is no necessary conflict between the privileges granted to a senior and to a junior licensee, the equitable remedy of the senior (if any) is not the removal of cloud from title, but an injunction to prevent the junior from infringing

on the rights of the senior, to be granted only when the junior is infringing or is threatening to infringe such rights.

[7] The special relief prayed by the plaintiff is that the deed to the defendant be canceled and held for naught in so far as it undertakes to convey to the defendant the right (inter alia) to take and use rock. There is no reason why the defendant should not, in subordination to the rights of the plaintiff, take and use on the premises all the rock it desires to use. Hence it is clear that the special relief asked ought not to be granted. On the other hand, I see no right in the plaintiff, under the facts alleged and proved, to have the court declare that the rights of the defendant in respect to taking rock are subordinate to the rights of the plaintiff. And this is true because of the presumption that the defendant does not claim otherwise, and because there is no allegation or proof that the defendant does claim otherwise. We are not here dealing with senior and junior grants of the same thing, which are necessarily in conflict. The licenses here in question have not been, are not now, and may never be, in conflict. To my mind the plaintiff will never be able to allege a right to relief, until the defendant is invading or threatens to invade the right of the plaintiff. And the remedy then will be that of injunction or the recovery of damages at law, and not the removal of cloud from title.

*Water.*—Everything said as to rock applies also to the respective licenses to use water, except that the contention that Steinman's grantors divested themselves and their successors of the right to use water, in subordination to the needs of Steinman and his successors, is even more plainly unsound than is the contention as to sand and rock.

*Other Material.*—The deed to the defendant undertakes to give it a license to use sand, rock, water *or other material* (except coal, gas, and oil) necessary for the construction, operation, or maintenance of improvements by the defendant. I think the reasonable construction of the words "other material" is that they mean earth or shale, or the ordinary clays of no commercial value. However, let us make the highly strained assumption that these words include iron ore, and fire clay. Still, unless it be made to appear that there is some iron ore or some fire clay on the land, the defendant's deed is not such a cloud on plaintiff's title as courts of equity will undertake to remove. As a matter of common knowledge, iron ore and fire clay are not so universally present as to justify a decree based on a bare possibility that these minerals are on or under the land in controversy.

It follows that the bill must be dismissed, at the cost of the plaintiff.